2-18-0328 Parkwell v. Morse III, plaintiff's attorney, being Anthony Donatti, defendant's athlete, Deborah Morse, plaintiff's attorney, and Chad Donatti, defendant's athlete. Arguing on behalf of the plaintiff's attorney, Mr. Parkwell v. Morse III, arguing on behalf of the defendant's athlete, Mr. Dona, Jay, and Jay Jr. Good morning, counsel and guests. Mr. Morse, are you ready to proceed? Yes, Your Honor. Please step forward. Mr. Morse, we have a very sophisticated timing system. We have a timer over there, and hopefully you'll hear it. It was demonstrated to me before. Okay. Very efficient. May it please the Court, Your Honors, good morning. What distinguishes this current appeal from the plethora of breach of contract damages cases that blends its way through Illinois courts is the simple fact that we are dealing with denial of damages for breach of a contract, which was a short sale transaction. The contract at issue was a real estate contract for Appellant's residence. It was breached, and a lawsuit was filed, and ultimately a bench trial on damages was held, during which the circuit court denied an award of damages in a total amount of $45,290 based on two primary components. Counsel, excuse me, I have a question. This short sale addendum was part of the Donati sale contract, was it not? Yes, ma'am, it was. Okay. And that addendum contained a contingency that required you to obtain the bank's approval for the short sale. That is correct. Okay. So if the bank didn't approve the transaction, you couldn't sell this property. That is correct. That was a contingency for the plaintiff to meet in order to tender a freeing of their title. So how was your short sale agreement with the bank collateral to the transaction? It was necessary to the transaction, correct? It was a necessary transaction on the part of the plaintiff's that is correct. But it involved, as the short sale addendum said, that I had, that the plaintiffs had to obtain the short sale irrespective of whether or not PNC Bank, in this case the lien holder in question, decided not to seek a deficiency judgment. There was no additional condition that the plaintiffs only had to obtain a short sale approval that lead to them of a deficiency judgment. So this $35,000 difference in the contract price would have, if this Donati contract had closed, would have gone to the bank. Right? The $35,000, if the Donati contract had closed and they hadn't defaulted, that, this $35,000 difference would have gone to the bank. That is correct. Okay. So your end, your agreement, I think you may have mentioned, required you to walk away, your agreement with the bank required you to walk away from the closing with $0. That is correct. So let me just follow up if I don't. So are you not attempting to circumvent this agreement? I am not, Your Honor. And how not? I am not attempting to circumvent this agreement because, first of all, it should be not, it should not even be relevant. This third party, what is basically, I'm going to call an independent contract between the mortgagor and the plaintiffs, should not be relevant for the simple fact that I believe that the collateral source rule should apply here. First of all, as I mentioned, the plaintiffs were not, were required to get a short sale approval even if they had to pay a deficiency judgment. That was a given. The decision by PNC Bank not to seek a deficiency judgment is the, in essence, a collateral source that is not related to the contract other than the fact that the short sale addendum, but it's still a separate contract between the plaintiffs and the lien holder. Under the collateral source rule, which applies in Illinois in cases in which there is a component of fraud, tort, and or willfulness in breach of the contract, the collateral source rule would hold that the party who had breached the contract would not be able to, in essence, step into the shoes and say, because you didn't have to pay $35,000, that inures to my benefit. But I think you're overlooking a component here. Would you agree under the collateral source rule for it to come into play? The plaintiff in this case is seeking to invoke the benefit of it has to sustain some actual loss. Okay? If you agreed in the short sale, did you not, that you would walk away with no money from the sale, correct? You would not receive any money from the sale. That was your agreement. Correct. So if you've agreed you're not going to receive any money, how can the collateral source doctrine be used to avoid having your recovery diminished or set off when you agreed you were not going to have any recovery in the first place? The answer to that is that as it is grafted into contract law in Illinois, it comes from tort. And there is a principle in tort that under the collateral source rule, it is considered more just for an injured party to receive the windfall than a wrongdoer to be relieved of full responsibility for his wrongdoing, and that's the child versus straddle case. But what is it being used to avoid setting off? If you're not going to receive anything, you sustain no actual loss, what is the relevance of the collateral source rule? If you've agreed you're not going to get any money out of this. I still had a sustainable loss because we had some damages awarded in this case. But the point is you are dealing with a breach, willful breach of an underlying contract. But does that include fraud? That did not include fraud according to the record. The Illinois law states that the collateral source rule may be applied in contract cases only where there is fraud, tort, or willfulness in the breach of the contract. And here we are hanging our head on the willfulness in the breach of the contract. Which willfulness is established as pointed out in the reply brief, that we have incontroversial convertible judicial admissions that the plaintiff had signed a loan estimate saying they had the financial wherewithal to proceed with this purchase. They received a mortgage loan commitment letter, yet they refused to sign it because they did not like the terms of the agreement of the mortgage loan that they got from the public bank in Chicago. They refused to sign the mortgage loan commitment, and a choice between I don't like the mortgage loan terms I got from the public bank, but I got them, or breaching the contract. They decided to breach the contract. The record also has additional evidence in there that when they breached the contract, their real estate attorney had advised them to proceed with the closing, had advised them that if they did not proceed with the closing, they would have a breach of contract, and finally had tendered to them at least two letters from appellant's counsel, including a draft complaint for specific performance that spelled out to them the consequences if they did not proceed with performance. On the other hand, and this goes into the second area. I contend that's a matter of – Well, before you get into the second area, the case law you rely on is distinguishable in, is it not, in that, as Justice Hutchinson pointed out, in those cases there was not only a breach of contract, but a theory of misrepresentation, fraud, or some sort of tort. And in this case, there is no tort alleged. It's only breach of contract. There is no place that I have seen that GNP Commodities, that that court said that the collateral source rule applies to willful breaches of contract. So the case authority that you have relied on doesn't support your argument. If I may, Your Honor, I believe that the subsequent, that American – excuse me, let me – American relied on GNP. American Fidelity refers to an underlying case GNC or something like that. GNP Commodities v. Walsh Hefferman Company. A breach of contract case. In essence, would it include willful fraud, breach, and something else? But it was also – the issue was whether or not the collateral source rule applied even if the injured party profited from the sale of the pork bellies at a price even greater than they were entitled to get. And I think that that does apply. I don't think it's fraud, tort, and willfulness to contract. It is our position that any of the three elements can satisfy the collateral source rule. Well, but the underlying of all three, as I read these cases, is there's something deceptive. There's something misrepresented. It is not just, I don't like this deal, so I'm going to not take this deal. There has to be some sort of not just misunderstanding, but misrepresentation or deceit. And where is it in this case? It's – I'll take it with your understanding, Your Honor. But what does willfulness in the breach mean? What does will – I mean, is there a – this is not a negligent, stumbled-in, I breached the case. This is an actual – I mean, if you think about it, they proceeded to get the mortgage loan. They applied for it. They signed a loan estimate. They got the mortgage loan commitment. And then they decided not to proceed with the breach because they didn't like the terms that they had actually applied for. I think that's a component of – it's not traditional tort or fraud. I will agree with that, but it's a component of willfulness. And where this comes in in my second point – Okay, but let's finish this one. Where in this record does it say that the terms that they decided to not accept near the closing in December of – December 15th were the ones they agreed to? I – you know, I did not see that specifically. It might be the same interest rate. It might be things of that nature. But there are other terms. What terms did they not agree with? They did not agree with, as I understand it, and as you look at the letter or email sent on December 21st of 2015, the date of breach, they did not get the terms that were originally offered to them by Republic Bank. Underswirling all of this, by the way, is the fact that they did have a mortgage loan contingency in the contract. But that mortgage loan contingency had expired. It had not been renewed. Under the contract, they still proceeded to obtain – apply for and obtain a mortgage loan commitment, even though the mortgage loan contingency had expired, and they got that. Mr. Morris, let me – moving ahead, let's assume for the sake of the argument that you were able to successfully overcome the hurdle and establish one of these foundational elements for invoking the collateral source rule. Again, what is this – what actual loss do you believe you sustained that would allow you to invoke the collateral source doctrine in the first place? What money did you lose as a result of this? If you take part – and this leads into the second point I'm making on this as a matter of law. Why should Illinois contract law be different between a short-sale transaction and a non-short-sale transaction? Why? Because you've agreed you're not going to receive any money whatsoever from the transaction in the first place, correct? That's correct. But under the collateral source rule, if it applies, that doesn't matter. It means it has two components, evidentiary and substantive. The evidentiary rule is that you cannot introduce that third-party collateral source benefit from PNC Bank into evidence, nor can the other side rely upon it for making an argument that there's no damage and it's a windfall. And I see where the argument is. But it was part of the contract. Exactly. It was there. This isn't something you had in your back pocket. It was attached to the real estate contract that everybody was working with. That is, you are referring, Your Honor, to the sales, the short-sale addendum. Correct. Yes, but that contract required me to proceed no matter what. Whether or not I got a deficiency that PNC Bank agreed to not pursue the deficiency agreement, I was still obligated to get it, and I got it. The deficiency agreement, if you look in the record, or the agreement not to pursue a deficiency judgment came from PNC Bank on April 6th of 2015, and the sale closed on April 12th, 2015. Now, the flip side of the rule is then in a short-sale transaction, you may not get breach. This ultimately tied up to the breach of contract. The deficiency is about $35,000. The breach of contract price difference is $35,000. The corollary is that until and unless a deficiency judgment was entered against plaintiffs, they would have no right to get compensation from Applebee's. But the underlying other argument that I had was, you know, the law needs a clear, precise, definable situation of what do you do in the situation of short-sale contracts. There is not any real law out there except general principles, and there's no case like this where anyone found that there was a short-sale transaction involved. But if the bank is not collateral to the transaction, how can we even opine on that? The bank is collateral. The bank was integral, not collateral. It certainly wasn't in the position of an insurance company. They didn't pay anybody anything. The bank did. That's true, but it's not restricted to an insurance company. If you look at the... But the relationship and the fact of payment. I mean, there was a paternity case, Giles v. Spratt, where that concept was raised about willfulness in the breach of contract. And the Avery v. State Farm involved OEM and non-OEM parts. It's collateral for the contract simply because it was a conditioned precedent for plaintiffs to go. And there's another maximum in contract law that the defendant should not take, be able, having breached a contract, be able to take advantage of another contract provision that was really there for the benefit of the seller. In this case, the seller could not be held liable if it could not secure the short-sale transaction. All right. Then the ultimate question here is, from the case that you read, the injured party and the defendant taking advantage, how were you injured relating to the $35,000? I was injured because the appellants were injured because they signed a contract for $410,000. It was a short-sale transaction. They did everything they were supposed to, and it got breached. And then they scrambled, did a duty to mitigate, found a cash offer for $375,000, and sold the property doing what they were supposed to do, what the duty demands them to do. The fact that PNC Bank collaterally decided to waive that deficiency judgment should not be relevant. What should be relevant, if there is a windfall, is that the windfall should not be visited upon the party who willfully breached the contract. What's the message that's being sent for the poor sap who is involved in the short-sale transaction? What does that mean for the duty to mitigate? I raised some of these very issues in my reply brief. I know, but counsel, the injury occurred to PNC Bank. The injury occurred even before the short sale. That house was in foreclosure. That house had to be resolved in some way. They decided to take the loss. So how are you injured as a result of their injury? If I may correct your honor, the house was not in foreclosure. Okay. I'm still injured. But, again, the point is, counsel, you were not out the money. The bank was out the money. That's correct. I think that was the main point. That's correct. Okay. But the collateral source rule should say it shouldn't count. And general contract principles should be routinely. Well, contract principles. I'm sorry. Go ahead. Should be routinely applied irrespective of whether there's a short sale transaction or not for the reasons that I've stated in my briefing. But there are at least two other paths by which this court, if it's not convinced by the collateral source rule, should find that the court, the circuit court, abused its discretion in denying what was a motion to strike as well as a corresponding motion to bar what I call what is now the short sale defense. I know. The short sale defense was not disclosed until after fact discovery and after they had filed a cross motion for summary judgment in which an immediate motion to strike was made. That motion to strike was heard and argued and ultimately not ruled upon, and it was reasserted as a motion to debar at the bench trial on damages, and it was not applied. You didn't integrate those earlier motions in the motion to debar, counsel. You didn't incorporate them. Yes, they are incorporated. There's a motion to strike, and then that motion to debar incorporates the motion to strike. It says specifically that they're incorporated? If you read my motion to debar, it will say that this is based upon the earlier motion to strike. Based on, but that you didn't use the words incorporate. I do not know if I used the word incorporate. I will tell you this, though. Counsel, your time has expired, and you'll have an opportunity to reply if you wish. Thank you. Thank you. Mr. Angelini. Thanks. Good morning, ladies and gentlemen of the appellate court. My name is Donald Angelini. I represent the Donatis in this appeal. The irony of this is that if you were even inclined to award this gentleman the $35,000 as some type of collateral source rule award, he wouldn't even be obligated to reimburse the person who lost or the entity that lost the money, which would be PNC Bank, because there was a complete forgiveness there. I mean, if he would talk about a windfall, I think his difficulty in answering did you actually lose money in this transaction really cuts to the heart of this issue. Would there have been any benefit to you, your clients, rather, if you had brought PNC in in this case? No, I don't think so, Your Honor. You mean as, like, a third party? A third party, yeah. No, I don't believe so, Your Honor. I mean, realistically, I don't know if it was considered or not. I was not in the lower court, so I wasn't the attorney representing the lower court. Well, it might have given some answers, although I think the court found the answers the trial court looked for and found some answers in the record. Correct. And if you remember, there was no all these issues about willfulness and what the penalties did or did not do was never part of the trial itself. A motion for summary judgment was granted, and granted saying that they breached the contract. So all this testimony about what was in the record regarding what the penalties did or did not do in terms of willfulness was not part of it. There was never a request for a finding that there was a willful violation or that there was fraud. There was never an allegation of fraud or material misrepresentation of fact. In fact, didn't the trial court actually find that there was a breach of contract? Yes, exactly. Whether, you know, but that was the finding. There was a breach of contract. They breached the contract, no question about it. So they really never got into a factual basis or any type of conduct which led to the breach. There was a breach. So your position is very simple and straightforward. The collateral source rule simply doesn't apply in this case. It's a matter of law. Correct, 100 percent. But I have a question, however. Plaintiffs do make a policy argument that the law, in essence, I think it is that the law should presume damages in a short sale breach of contract case actually to compensate homeowners for the economic distress that they've suffered. Well, how would you respond to that policy argument? Well, correct. In the policy, the response to that, there was a forgiveness. And thank God for the forgiveness by PNC Bank, because they forgave this gentleman from his obligation in regard to the bank. But that policy would be between the bank and the lender and this gentleman, not between the third party to which they contracted. You know, he's looking right now, and I certainly understand his point of view, but if you look at the case law, specifically that GNP case, they sued under three different theories, breach of contract, willfulness, fraud and misrepresentation, and willful and intentional fraud. And there was finding of fraud. There was a finding in that case. There was a jury verdict for fraud, and it was upheld on appeal. And then the American Family Fire Insurance, they made a statement that said, that argues that in Illinois, the collateral source rule applies in contract cases only where there is an element of fraud or willfulness. I don't know if they're talking about a willful breach. I don't know if they're talking about the willful violation or the willful fraud that was pled in the original GNP case. But regardless, the reality of it is there was no loss. And in the collateral source rule, in the traditional sense, if there's a collateral source such as an insurance company, maybe there's a contractual agreement where the person who suffers the loss is contractually bound to reimburse the collateral source. Or there's something out in the open where there's a collateral source such as an insurance company makes a payment, but it really isn't determined what the obligation is yet. He may have to pay some of it. He may have to pay all of it. In this particular situation, which is the third situation, the source, and I don't even think it's collateral, I think it's an interval source, is telling you you don't have to pay me back. So there is no reason or no way that the application of the collateral source rule should apply. And if you look at that Giles case that was cited by Mr. Moores, that was a case where the Paternity Act, if there was a paternity action on the Illinois Paternity Act, the father and the mother both have to pay their share of the medical bills, 50-50 of the medical bills. The court awarded the mother 50% of those bills from the father, and the father made the argument, geez, the mom got paid from the insurance company. And they didn't know whether the insurance company would be seeking reimbursement or not. And that was one of the issues that the Giles court said was, I don't know how I could apply the collateral source rule because I don't even know what the obligation for repayment is. Here, we know what the obligation for repayment is. There is no obligation. So how could there be a collateral source? I mean, again, if you were going to award him this money, he wouldn't even be obliged to pay back the guys who really lost in this, which was PNC Bank. And he said, well, I should be the beneficiary of that. I should get that windfall. Nobody should get the windfall. Well, but on the other hand, the defendant's breach did result in this $35,000 loss, yet the defendants only had to pay $3,600 in damages. I mean, the plaintiff's out-of-pocket expenses. I mean, is that fair? Well, I don't think it's fair to PNC. And if PNC would have come in as some type of interpleader, really PNC should have been the plaintiff in this case. If there really was equity, and this is a court of equity and we're all equitable, PNC actually is the party that suffered the loss. And he was the beneficiary of PNC as well. I mean, he keeps saying, why should my client be the beneficiary of the goodwill of PNC? Well, PNC forgave the $34,000 of the $23,000 or whatever their deficiency would have been. So he was also the beneficiary of their goodwill. But that's between mortgagor and the borrower and the lender, not to some third party. Now, did they receive a benefit by all of this? Well, realistically, you know, Mr. Morse didn't mitigate his damages, and we have to give him credit for that. But his mitigation was what we would expect mitigation to be. It doesn't mean all of a sudden, hey, pay me $35,000. I just don't see the application. Have you seen any cases in your research that remotely stand for the proposition that even in the absence of an actual loss, the collateral source rule can come into play? Never. I didn't see anything. I mean, we would be asked to extend this well beyond any existing law. Yeah, I mean, if you go usually when you don't see it. The reason this is a case of first impression is it's so crazy, not so crazy, but it's so unusual to request something like this, that it would apply in a pure run-of-the-mill breach of contract case. You're not going to see it. And sometimes it would go to other jurisdictions. I didn't see anywhere in the briefs that went to, hey, New York, here's a breach of contract case and a standard breach of contract where fraud wasn't alleged or there wasn't some finding of a misrepresentation which would lead to it. I saw nothing in any other jurisdiction. It is sort of a creative argument, though, isn't it? I mean, it is a creative argument. I mean, he's a creative guy, and he's a brilliant guy, and certainly he's relentless. But being relentless and creative, there's nothing that gives him a basis. Because at the end of the day, Judge Wheaton got it right. She looked at the actual loss, which is really what the collateral source rule is all about. I understand why it was applied, and I was an old PI lawyer, so I applied it myself when it inured to the benefit of my client. But always the background of it was there's another source out there, and at some time, the plaintiff may have to recompensate that source because they have a contractual obligation to do that. So why prevent somebody from attaining a judgment or reward without knowing that they have to compensate that collateral source? In this case, we know that there is no compensation going back to the collateral source. So could we say the plaintiff's argument has some superficial appeal, but when we break it down to its base elements, it's just not there? Correct. Counsel, briefly with respect to 219C, do you agree that the trial court never ruled on the first 219C, the motion to strike and the motion for sanctions? I do, Judge. But do you believe that that failure to rule was the equivalent of a denial that counsel asserts? I wasn't there at the trial court, Judge. I can't say that it was a denial. I think it was going to be a one-day bench trial, and there's a lot of discretion at the trial court level as to what was going on with regards to this case as it approached that trial. I think the court wanted to take everything in one setting, and I think the court took this motion for sanctions and the trial itself and had a hearing based upon that. But she only ruled on the motion to debar. Correct. That was at the time of the trial, not on the other two motions that were earlier asserted. Correct. And argued at the time of the motion for summary judgment. Correct. I believe that her rulings on this at trial were rulings denying that 219 motion. The motion to debar. Correct. Correct. Well, let's assume there was no ruling. Whose obligation is it under the law to press for and obtain a ruling? That would have been the plaintiff's, because it would have been inert to the plaintiff's benefit. Right. And if they don't, there's a presumption it's been abandoned, correct? Correct. I mean, I think a lot of the arguments were abandoned. I think the willful argument was abandoned, that there's somehow this willful, like it matters whether there's a willful breach or a negligent breach or a reckless breach. I think a lot of that was abandoned. I mean, the arguments were all made, and, you know, they knew this was the issue. Everybody knew this was the issue, and everybody was prepared on that issue. And they understood that this was going to either be a windfall or it wasn't going to be a windfall. And I think Judge Wheaton got it right. Well, I think it wasn't there some conversation on the issue of short sale defense, which is a new term, that there wasn't any surprise because this had been discussed throughout, including the earlier motions and things of this nature. It had come up more than once. Sure, and I think Judge Wheaton appreciated what I appreciated when I read the record, was it's always upon the plaintiff to prove their own damages. You know, if I'm going in and I have something that's a collateral source rule and I have $70,000 of medical bills and only $40,000 of them were paid, you know, it's my obligation to put that evidence in. And it's the defendant's obligation. I mean, there would be no defense of the medical billing defense. No one would have to assert that defense. They would assume that I would have to prove my damages as a plaintiff, just as Mr. Morse had to prove his damages. So I think I'm talking around it, but the reality of it is I think the trial court always saw this as a proof of damages. Never saw it as a short-sale defense. You're going to have to prove your damages. What did you lose? What were your actual losses? What came out of your pocket? And the judge awarded properly based upon those issues. What about there was additional interest that needed to be paid between the default or the breach and the closing sometime in April of 2016, I think? Correct. So that all got eaten up in the deficiency. So, again, PNC was the entity that ate that further deficiency because that interest was never paid by Mr. Morse. So at the closing, at the second closing, it got put into the second closing. PNC, again, was the loser in this. But pursuant to their agreement with their own borrower, you know, they forgave it. And, in essence, forgave Donati because, realistically, they left the case. And they, again, were the losers in all of this, but not to the benefit of either Donati or Morse. Thank you for your consideration. Mr. Morse. Two issues, please. I disagree that the short sale was an issue until after close of back discovery and after defendants filed their cross-motion for summary charges. Counsel, will you just repeat what you said, please? I'm not sure I caught the whole sentence. I'm sorry. I disagree that the short sale defense wasn't issued before the close of discovery and before the filing, subsequent filing, of defendants' cross-motion for summary judgment. It was not disclosed. But it was an issue before the trial. It wasn't. You knew before the trial because it was actually argued. The issue of damages was argued at the cross-motions for summary judgment, right? Yes. They were. But the short sale. But that was after the filing of the cross-motion for summary judgment and after filing the motion to strike at that point. What is interesting about my opponent's response is that there is an unopposed, uncontested violation of Rule 213 in failing to disclose the short sale defense in response to a pointed interrogatory in that effect, which is in my opening brief. And for that reason, the court should have struck that defense because I did not know about it until they filed the cross-motion for summary judgment. To say that everybody thought this was, you know, everybody knew what was going on is not fair. But you abandoned that motion, Counsel. You never got a ruling on that motion. Interesting that, and I saw Judge Hudson brought this up. It is my obligation to get this judge to rule any way I can, and I tried everything I could. And it's detailed in my appellate's brief. I never gave up on this. I never gave up even at the bench trial when the court finally said, I'm going to take judicial notice that you have a motion for sanctions. But, Counsel, the law provides, the case you cited, Rodriguez v. Illinois Prisoner Review Board, says at 433, a subsequently filed notice of appeal following the failure by a litigant to obtain a ruling and a motion serves as an abandonment of the previously filed motion. So regardless of how hard you tried, that notice of appeal was filed under the law. That's an abandonment. I did not abandon that issue. I understand. I have to look at Rodriguez again. But I didn't read Rodriguez that way. What I read is, I have to take every step I can to get a ruling. And that's what I did. And then I preserved that in my notice of appeal. So you're saying you tried to get the court to rule specifically and the court did not rule specifically. Is that what you're saying? You tried to get the court to rule? Yes. Did you ever ask the court something like, Your Honor, is Your Honor declining to rule on my motion? Couldn't you have asked that? It got a response one way or the other? It got raised at the bench trial. The motion to debar was argued as a pretrial motion and denied. The motions for sanctions were raised as well. And then it was also argued at closing, both the motion to debar and the motion for sanctions, either as a monetary reward of $35,000 or to debar. Well, let's assume it was specifically argued. It's still incumbent upon you to obtain a ruling. Couldn't you have said, Your Honor, with all due respect, I would like to have a ruling for the record for purposes of preserving my right to appeal this issue? Couldn't you have specifically said that? I don't see a case that says I specifically have to say that, but I understand what you're saying. Justice Zinoff, the cases say that you have to obtain a ruling. The judge made a ruling that she found a breach of contract here, but she did not see the necessary intent, whatever the words were she said, in order to award sanctions. So to some extent, that is a ruling, which is at the end of her comments as she ruled from the bench. But I do agree that an obligation pushed her decision. What type of discovery that wasn't already conducted, because it seems like there was some significant discovery that had preceded these motions, what discovery would have talked about or further defined this short sale defense? Well, I asked for all facts and evidence upon which you rely to contend that there were no damages or words to that effect, or what are your defenses, I believe. I got three answers back. I got mitigation of damages, third-party negligence, and mortgage contingency. I did not get a disclosure that they were going to rely on the judgment from the PNC Bank's decision and use it offensively, in essence, against me. I wanted them to disclose their strategy, so to speak, but you certainly were aware of their position with regard to the issue of damages, counsel. Prior to that time, you did not know that they were arguing that you had no damages. That's correct. It was not disclosed in response to my interrogatories. That wasn't what I asked. I was not aware that they were going to argue that I could not get contract differential damages. That's accurate. And I think if you see, if you look at the underlying record, 90 percent of the paper before you is filed by plaintiffs. And, you know, I understand creativity. I understand that this doesn't have any surface appeal, these arguments. My point is I think I have raised serious issues involving a serious matter of a short sale transaction. And the court will rule as it sees fit, but at least there will be some clarity in this law. And we support the proposition that there should be no difference between damages, whether there's a short sale or not. I appreciate very much your time and effort in hearing our arguments. Thank you very much. Thank you, counsel. And thank you both for your arguments today. We will take the matter under advisement, and we will issue a decision in due course.